UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

HITEKS SOLUTIONS, INC.,

                            Plaintiff,

                     -v-

CITIBANK, N.A., *et al.*,

                            Defendants.

25-CV-200 (JPO)

<u>OPINION AND ORDER</u>

---

J. PAUL OETKEN, District Judge:

      Plaintiff Hiteks Solutions, Inc. brings this action against Citibank, N.A. and various unidentified Defendants (collectively, "Citibank"), alleging conversion, fraud, commercial bad faith, breach of contract, and negligence, as well as violations of the U.C.C. and New York General Business Law Sections 349 and 350. Before the Court is Citibank's motion to compel arbitration and stay the action pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 2, *et seq.* For the reasons that follow, Citibank's motion to compel arbitration is granted and the case is stayed pending arbitration.

**I.  Background**

      Hiteks Solutions, Inc. ("Hiteks") is a health information technology company founded by Gerasimos Petratos. (ECF No. 12 ("FAC") ¶ 1.) Petratos also serves as the company's Chief Executive Officer. (*Id.*)

      On November 3, 2023, Petratos "received a telephone call from someone who identified themselves as a representative from the Citibank Fraud Department." (*Id.* ¶ 5.) The representative informed Petratos that the debit card associated with Hiteks's account had shown a $600 charge at a Walmart in Texas, and asked Petratos whether this charge was valid. (*Id.*

1

¶ 13.) Petratos said no. (*Id.*) The caller told Petratos that they would freeze the debit card and lock the Hiteks bank account for two business days to investigate the fraudulent charge. (*Id.*)

Shortly after that, between November 6 and November 8, 2023, Citibank processed three wire transfers of approximately $50,000 each to individuals in three different states, none of whom were affiliated with Petratos or Hiteks. (*Id.* ¶¶ 29, 32-34.) Petratos eventually brought suit against Citibank, predicated on Citibank's alleged failure to secure his account and to detect or verify the three wire transfers through commercially reasonable means, including two-factor authentication. (*Id.* ¶¶ 47-49, 51.)

Prior to the November 2023 call and unauthorized wire transfers, Petratos had opened three different accounts with Citibank, including one around 2013 and a second around 2017. (*Id.* ¶ 2.) In April 2021, Petratos opened a third account to update Hiteks's federal tax identification number ("EIN") by filling out a "Business Deposit Account Application." (ECF No. 26-1; ECF No. 29 at 7-8.) That application included the following language:

> The business identified in this Business Resolution . . . acknowledges that all accounts now or hereafter established under this Business Resolution shall be governed by the rules and regulations of Citibank, N.A. (the "Bank") including those set forth in the Bank's CitiBusiness[] Client Manual, receipt of which is hereby acknowledged, and applicable state and federal laws.

(ECF 26-1 at 4.) The CitiBusiness Client Manual ("Client Manual"), which became effective in November 2016, states: "By opening and maintaining an account, you agree that this Manual will operate as an agreement between you and Citibank, and that you are subject to the arbitration agreement set forth herein. Please read all of these sources carefully." (ECF 26-2 at 2, 4.) The Client Manual also contains an arbitration provision, which reads in relevant part:

> PLEASE READ THIS PROVISION OF THE AGREEMENT CAREFULLY.
>
> THIS SECTION CONTAINS IMPORTANT INFORMATION REGARDING YOUR DEPOSIT, BUSINESS CREDIT ACCOUNT OR BUSINESS CHECKING PLUS

ACCOUNT AND THE SERVICES RELATED THERETO. IT PROVIDES THAT EITHER YOU OR WE CAN REQUIRE THAT ANY DISPUTES BE RESOLVED BY BINDING ARBITRATION. ARBITRATION REPLACES THE RIGHT TO GO TO COURT, INCLUDING THE RIGHT TO PARTICIPATE IN A CLASS ACTION OR SIMILAR PROCEEDING. IN ARBITRATION, THE DISPUTE IS SUBMITTED TO A NEUTRAL PARTY, AN ARBITRATOR, INSTEAD OF A JUDGE OR JURY. ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED THAN RULES APPLICABLE IN COURT. IT ALSO INCLUDES A WAIVER OF THE RIGHT TO TRIAL BY JURY.

Agreement to Arbitrate Disputes. Either you or we may elect, without the other's consent, to require that any dispute between us, or concerning your Citibank deposit account, Business Credit account or Business Checking Plus account, except those disputes specifically excluded below, be resolved by binding arbitration.

Disputes Covered by Arbitration. Any claim or dispute relating to or arising out of your deposit, Business Credit account or Business Checking Plus account, this Manual, this Agreement, or your relationship or dealings with Citibank will be subject to arbitration ("Disputes"). All Disputes are subject to arbitration, no matter what legal theory they are based on or what remedy (damages, or injunctive or declaratory relief) they seek. Disputes include any unresolved claims concerning any services relating to such account, including, without limitation, safe deposit box services, wire transfer services, and use of a Citibank Banking Card/CitiBusiness Debit Card. Disputes include not only claims made directly by you, but also made by anyone connected with you or claiming through you, such as a joint account holder, account beneficiary, employee, representative, agent, predecessor or successor, heir, assignee, or trustee in bankruptcy. Disputes include not only claims that relate directly to Citibank, but also its parent, affiliates, successors, assignees, employees, and agents and claims for which we may be directly or indirectly liable, even if we are not properly named at the time the claim is made. Disputes include claims based on any theory of law, contract, statute, regulation, tort (including fraud or any intentional tort), or any other legal or equitable ground, and include claims made as counterclaims, crossclaims, third-party claims, interpleaders or otherwise. A party who initiates a proceeding in court may elect arbitration with respect to any dispute advanced in that proceeding by any other party. Disputes include claims made as part of a class action or other representative action, it being expressly understood and agreed to that the arbitration of such claims must proceed on an individual (non-class, non-representative) basis. Disputes also include claims relating to the enforceability or interpretation of any of these arbitration provisions. Any questions about whether disputes are subject to arbitration shall be resolved by interpreting this arbitration provision in the broadest way the law will allow it to be enforced.

Disputes Excluded from Arbitration. Disputes filed by you or by us individually in a small claims court are not subject to arbitration, so long as the disputes remain in such court and advance only an individual claim for relief.

(ECF No. 26-2 at 11.)  Citibank first moved to compel arbitration on April 7, 2025.  (ECF No. 16.)  On April 24, 2025, Citibank sought permission from this Court to refile its motion to compel arbitration due to the omission of an exhibit (ECF No. 21), which the Court ultimately granted (ECF No. 23).  Citibank filed a revised motion to compel arbitration on May 16, 2025 (ECF No. 25), as well as a memorandum of law in support (ECF No. 28 ("Mem")).  Hiteks opposed the motion on May 30, 2025.  (ECF No. 29 ("Opp.").)  Citibank filed a reply on June 10, 2025.  (ECF No. 32 ("Reply").).[1]

## II.    Legal Standard

A court's decision to compel arbitration is governed by the FAA.  Under the FAA, "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  The "threshold question of whether the parties indeed agreed to arbitrate" is a matter of state contract law, *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016), "to be decided by the court, not the arbitrator" unless the contract unmistakably provides otherwise, *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986).

When deciding a motion to compel arbitration, courts apply "a standard similar to that applicable for a motion for summary judgment."  *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003).  Under this standard, courts must "consider all relevant, admissible evidence

---

[1] On June 15, 2025, Hiteks also sought leave to file a surreply.  (ECF No. 33.)  Generally, "[c]ourts grant leave to file sur-replies when they address arguments raised for the first time in a reply brief."  *SEC v. Ripple Labs, Inc.*, No. 20-CV-10832, 2022 WL 329211, at *3 (S.D.N.Y. Feb. 3, 2022).  Citibank first raised the estoppel argument, which forms the basis of Hiteks's motion to file a surreply, in its main brief.  (*See* Mem. at 13.)  Accordingly, the motion for leave to file a surreply is denied.

submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . affidavits." *Nicosia*, 834 F.3d at 229 (quotation marks omitted). If a district court concludes that "the parties entered into a valid, enforceable agreement," then an "order compelling arbitration is warranted," *Suqin Zhu v. Hakkasan NYC LLC*, 291 F. Supp. 3d 378, 386 (S.D.N.Y. 2017), and the court "must stay proceedings," *McMahan Secs. Co. L.P. v. Forum Cap. Mkts. L.P.*, 35 F.3d 82, 85 (2d Cir. 1994). Conversely, if there is a genuine dispute of material fact as to the creation of the agreement for arbitration, "then a trial is necessary." *Nicosia*, 834 F.3d at 229 (quotation marks omitted).

### III. Discussion

#### A. The Validity of the Agreement to Arbitrate

The parties in this case agree that New York law applies. And under New York law, an arbitration agreement requires "a manifestation of mutual assent sufficiently definite to assure that the parties are truly in agreement[.]" *Zhu*, 291 F. Supp. 3d at 387 (quotation marks omitted). To evaluate whether there was "a manifestation of mutual assent," courts assess "the basic elements of the offer and the acceptance to determine whether there is an objective meeting of the minds sufficient to give rise to a binding and enforceable contract." *Express Indus. & Terminal Corp. v. New York State Dep't of Transp.*, 93 N.Y.2d 584, 589 (1999).

Hiteks does not dispute that the Client Manual contains an arbitration provision. It contends instead that Citibank did not provide it with adequate notice of the arbitration provision because the provision was contained in a separate agreement (the Client Manual) that was, in turn, incorporated by reference in the Business Deposit Account application form. Because the arbitration provision was insufficiently obvious and no Citibank representative called attention to

it, Hiteks argues, Hiteks had no inquiry notice of the arbitration terms and therefore did not meaningfully assent to them. (Opp. 15-16, 20.)

"Where an offeree does not have *actual* notice of certain contract terms, he is nevertheless bound by such terms if he is on *inquiry* notice of them and assents to them through conduct that a reasonable person would understand to constitute assent." *Starke v. SquareTrade, Inc.*, 913 F.3d 279, 289 (2d Cir. 2019). To determine whether an offeree was on inquiry notice of certain contract terms, "New York courts look to whether the term was obvious and whether it was called to the offeree's attention," which itself "turns on whether the contract terms were presented to the offeree in a clear and conspicuous way." *Id*.

In support of its argument, Hiteks relies almost exclusively on cases involving online agreements to arbitrate. (Opp. 16-19.) But those cases, which scrutinized the particular design and content choices of different webpages to ascertain the existence of mutual assent, are of limited utility here. Petratos's transaction with Citibank involved none of the scrolling, hyperlinks, or pop-ups at issue in those contracts. *Cf. Pilon v. Discovery Commc'ns, LLC*, 769 F. Supp. 3d 273, 289-90 (S.D.N.Y. 2025); *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 29-30 (2d Cir. 2002); *Zachman v. Hudson Valley Fed. Credit Union*, 49 F.4th 95, 102-03 (2d Cir. 2022). Instead, Petratos signed a physical contract on behalf of Hiteks in-person at a Citibank branch. (ECF No. 26-1 at 4.) The contract unambiguously referenced and incorporated the terms of the Client Manual, and it did so in a paragraph immediately preceding the line where Petratos signed by hand. (*Id.*) Hiteks adduces no support for the proposition that the contract language, so positioned, was so inconspicuously presented that it precluded any manifestation of mutual assent.

6

Hitek argues, as a secondary matter, that the contract language was legally insufficient to put it on notice of the arbitration terms because it incorporated the relevant document by reference and did not expressly state that the incorporated document contained an arbitration provision. (Opp. 19.) But courts have found arbitration agreements incorporated by reference to be valid even where the incorporating language included no mention of arbitration. *See, e.g.*, *Aceros Prefabricados, S.A. v. TradeArbed, Inc.*, 282 F.3d 92, 96-97 (2d Cir. 2002) ("[W]e have specifically found that parties were bound to arbitrate under arbitration clauses they never signed, where those clauses were contained in other documents that were incorporated by reference."). Indeed, in *Pagaduan v. Carnival Corporation*, the Second Circuit—applying New York law—held that an arbitration provision was enforceable even though it was two incorporations removed from the contract signed by the plaintiff, which also contained no mention of arbitration. 709 F. App'x 713, 716 (2d Cir. 2017). The facts that the plaintiff "was unaware of the arbitration clause; that he was never told about it; and that he never consented to incorporation by reference of any additional terms" did not "rebut[] the powerful presumption in favor of enforcing freely negotiated contracts, especially in the arbitration context." *Id.* The same is true here.

New York law provides that a party who signs a written contract "is conclusively presumed to know its contents and to assent to them" and is "bound by its terms unless there is a showing of fraud, duress, or some other wrongful act on the part of any party to the contract." *Renee Knitwear Corp. v. ADT Sec. Sys., Northeast, Inc.*, 277 A.D.2d 215, 216 (2d Dep't 2000) (internal quotation marks and citation omitted). The form signed by Petratos unambiguously and specifically referenced the Client Manual. (ECF No. 26-1 at 4.) Hiteks points to no fraud or overreach on the part of Citibank that would have impeded Petratos's ability to freely assent to

7

the contract's terms. Nor does Hiteks's characterization of Petratos's interactions with Citibank as merely "ministerial" alter its obligation to examine a contract's contents before signing. (Opp. 8, 20.) *Cf. Pagaduan*, 709 F. App'x at 717. Accordingly, the arbitration provision in Citibank's Client Manual is valid and enforceable.

### B.    The Scope of the Agreement to Arbitrate

Hiteks separately argues that the arbitration agreement does not cover its claims of false advertising and deceptive business practices. This is so, Hiteks asserts, because those claims arise from conduct predating Petratos's signing of the contract in April 2021, and the arbitration provision does not purport to apply retroactively to that conduct.[2] (Opp. 24-26.)

The key question when delineating the scope of an arbitration agreement, however, is not whether the conduct underlying any of the claims took place before the date the arbitration provision was signed. Instead, the analytical touchstone is "whether the parties intended for the arbitration clause to cover the present dispute." *Holick v. Cellular Sales of New York, LLC*, 802 F.3d 391, 398 (2d Cir. 2015). This, in turn, depends on the text of the arbitration provision. In *Holick*, on which Hiteks relies, the court declined to retroactively apply the arbitration provision in the plaintiffs' employment contracts to a dispute about whether the plaintiffs had previously been misclassified as independent contractors. *Id*. The court's analysis hinged on the text of the arbitration provision: The provision covered claims "arising out of, or in relation to . . . [the plaintiffs'] employment" with the company, and as such, the plaintiffs' claims about how they were classified *before* they became employees could not, by definition, relate to the plaintiffs' "employment." *Id.* at 393, 398. Similarly, in *Khowala v. Vivint Smart Home, Inc.*, the second

---

[2] Citibank does not furnish any documentation from—or make any arguments related to—when Petratos allegedly opened accounts with Citibank in 2013 and 2017.

8

case on which Hiteks relies, the court declined to apply an arbitration provision to a burglary that occurred a week before the arbitration agreement was signed, citing the agreement's language limiting its scope to disputes "arising out of, relating to, or in connection with" the later-signed agreement. No. 23-CV-1068, 2024 WL 3638265, at *4 (S.D.N.Y. Aug. 1, 2024).

The proper inquiry is thus whether the arbitration agreement covers or excludes, by its own terms, Hiteks's claims of false advertising and deceptive business practices. There is no doubt that Citibank's arbitration provision is broad. It encompasses "[a]ny claim or dispute relating to or arising out of [Hiteks's] deposit, Business Credit account or Business Checking Plus account, this Manual, this Agreement, or [Hiteks's] relationship or dealings with Citibank." (ECF No. 26-2 at 11.) It includes "claims based on any theory of law, contract, statute, regulation, tort (including fraud or any intentional tort), or any other legal or equitable ground." (*Id.*) And it specifies that "[a]ny questions about whether disputes are subject to arbitration shall be resolved by interpreting this arbitration provision in the broadest way the law will allow it to be enforced." (*Id.*)

"[F]ederal policy requires us to construe arbitration clauses as broadly as possible." *Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 19 (2d Cir. 1995) (brackets and internal quotation marks omitted). Accordingly, a broad arbitration agreement of the sort here "creates a presumption of arbitrability which is only overcome if it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 74 (2d Cir. 1997) (internal quotation marks omitted). Citibank's arbitration provision clearly covers Hiteks's claims. It contains no discernible temporal limitations. Hiteks's deceptive business practices and false advertising claims are plainly covered categories of claims that arise from its "relationship or dealings with

Citibank." (ECF No. 26-2 at 11; *see, e.g.*, FAC ¶ 18.) Given this sweeping language, there is no basis for Hiteks's assertion that, despite assenting to these terms, it did not "intend[] for the arbitration clause to cover" all of its current claims against Citibank. *Holick*, 802 F.3d at 398.

### IV. Conclusion

For the foregoing reasons, Defendant's motion to compel arbitration is GRANTED. The case is hereby STAYED pending arbitration.

The Clerk of Court is directed to close the motions at Docket Numbers 16, 25, and 33, and to mark this case as stayed.

SO ORDERED.

Dated: September 23, 2025
New York, New York

_____
J. PAUL OETKEN
United States District Judge